IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:17-CV-98-FL

| | | |
|---|---|---|
| THE PORK COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| SUMMIT INVESTMENTS SOUTHEAST | ) | |
| a Tennessee General Partnership, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion to dismiss or, in the alternative, to transfer. (DE 12). Plaintiff responded in opposition and defendant replied. In this posture, the issues raised are ripe for ruling. For the following reasons, defendant's motion is denied.

## STATEMENT OF THE CASE

Plaintiff commenced this action on May 12, 2017, in Dublin County Superior Court seeking a declaration under the North Carolina Declaratory Judgment Act ("NCDJA") of plaintiff's rights under a commercial warehouse lease (the "lease") with defendant. In particular, plaintiff seeks declarations that 1) plaintiff has neither breached the lease, nor is it in default of the lease, as defendant contends; 2) that defendant is not entitled to terminate the lease; 3) that defendant is neither entitled to take possession of the leased premises nor terminate plaintiff's right of possession of the premises; and 4) that defendant is not entitled to monetary damages. Plaintiff also asserts four breach of contract claims on grounds that defendant improperly declared plaintiff in default; demanded cures for approved or allowed modifications or alterations; and unreasonably withheld

approval of modifications. In addition to declaratory relief, plaintiff seeks damages in excess of $25,000, costs, fees, and jury trial.

Defendant removed the action to this court on May 23, 2017, and filed the instant motion to dismiss on May 31, 2017. In its motion to dismiss, defendant asserts that plaintiff impermissibly used "procedural fencing" to file this action before defendant filed an action on May 16, 2017, against plaintiff in the United States District Court for the Eastern District of Tennessee captioned Summit Investments Southeast v. The Pork Company, Inc., No. 3:17-CV-213 (the "Tennessee case"), asserting claims of breach of contract and tort claims arising out of plaintiff's asserted defaults under the lease. Defendant seeks dismissal of the instant action pursuant to Federal Rule of Civil Procedure 12(b)(6), the NCDJA, and the court's inherent authority. Defendant seeks, in the alternative, to transfer the instant matter to the Eastern District of Tennessee pursuant to 28 U.S.C. § 1404(a). In support of the motion, defendant attaches a copy of the complaint in the Tennessee case, as well as a copy of judicial caseload statistics produced by the Administrative Office of the United States Courts.

Plaintiff filed response to the instant motion on June 21, 2017, including as an attachment an affidavit of Salvatore Villari, Vice-President of plaintiff. Defendant replied on July 5, 2017.

## STATEMENT OF THE FACTS

The facts alleged in the complaint, as well as the procedural history of this case and the Tennessee case, may be summarized as follows. Plaintiff is a Delaware corporation with its principal place of business in Dublin County, North Carolina. Defendant is a Tennessee general partnership that owns a 21.78 acre property in Duplin County, North Carolina, on which a commercial warehouse (the "warehouse") is located. On April 1, 2011, plaintiff executed the lease with

defendant, which allowed plaintiff to take a 69,558 square foot portion of the warehouse at 1012 US Highway 117 South, Warsaw, NC 28398, for a term of 15 years. The lease provides that "[n]o modifications or alterations to the buildings . . . are allowed without prior written consent of the Lessor which consent will not be unreasonably withheld." (DE 12-2 at 14).[1] The lease states that the "Premises shall be only used for Food Processing, Manufacturing, Cold Storage and Warehouse purposes." (Id. at 16). In addition, it states "[t]his Lease shall be governed by and construed in accordance with the laws of the State of North Carolina, without regards to principles of conflicts of laws." (Id. at 17).

The parties executed five addenda to the lease, two in 2011, two in 2014, and one in 2015. (DE 12-2 at 18-21, 26-27; 12-3 at 1-2, 4-8). "Addendum No. 3" allowed plaintiff to expand its business operations in up to approximately 35,743 square feet of the warehouse space adjacent to the portion of the warehouse space it was already leasing (hereinafter, the "leased property" or the "premises") (DE 12-3 at 1). Between 2011 and 2015 plaintiff presented construction plans and other information to defendant describing alterations and modifications it wanted to make, and defendant approved and/or did not object to these plans. Plaintiff has never used the premises other than for allowed uses under the lease.

On February 17, 2017, defendant sent plaintiff a "Property Report" drawing attention to certain "maintenance issues before they become costly problems," and asserting that certain

---

[1] The lease, which is integral to and expressly referenced in the complaint, is not filed with the complaint. However, defendant attaches a copy of the lease as an exhibit to the instant motion. Citations by the court are to docket entry (DE) numbers in the docket in the instant matter, unless otherwise specified, and page numbering specified is the page number specified on the face of the document displayed in the court's Case Management / Electronic Case Filing (CM/ECF) system, and not the page number specified on the face of the underlying document. In this instance, the court does not attach a copy of the lease to this order because the copy of the lease in the record is of low quality and some portions are not decipherable.

3

alterations were not approved or needed to be approved or removed, based upon an inspection of the property by a representative of defendant. (DE 1-1 at 21-44). On March 10, 2017, defendant sent a notice of default to plaintiff informing plaintiff of "deficiencies that need to be addressed according to the lease," referencing "unapproved alterations" set forth in the Property Report. (DE 1-1 at 18). Defendant stated "until such time as a resolution has been reached, you <u>must cease</u> all work on the modifications." (<u>Id.</u> at 19) (emphasis in original). Defendant noted that plaintiff's lenders "need notice as to how long they have to respond to the removal of any equipment should termination be a possibility." (<u>Id.</u>). Further defendant stated that it has "been marketing the facility at a value of $13,942,000 for a couple of years," and it "would be willing to help [plaintiff] with securing a reasonable mortgage wit ha [sic] credible lender if that is something that you would like us to do." (<u>Id.</u>).

In a March 27, 2017, response to defendant, plaintiff noted that it had proposed to purchase defendant's entire 21.78 acre property at an undisclosed price on March 24, 2017. (<u>See</u> DE 1-1 at 47). "However," plaintiff stated, "if the parties cannot come to an agreement on a purchase price, then we will have to address those matters raised in the Notice of Default. While we are confident we can establish [plaintiff's] actions did not breach the Lease, it is willing to work with [defendant] to address any concerns it has regarding the expansion." (<u>Id.</u>). Plaintiff then outlined its plans regarding correction of items noted in the Property Report, concluding by noting that it has "incurred over $5 million in costs related to this construction and installation of new equipment." (<u>Id.</u>) "Should [defendant] attempt to terminate the Lease by declaring [plaintiff] in default," plaintiff stated, "[plaintiff] will exercise all legal rights available to it to prevent that, as well as seek to

4

recover any monetary damages caused by [defendant's] actions." (Id.).[2]

On April 14, 2017, defendant provided notice to plaintiff of additional instances of default under the lease, including that plaintiff had "materially and significantly changed the nature of the business [plaintiff] was permitted to conduct at the Premises." (DE 1-3 at 12-13). Defendant further states: "Notice is given that unless [plaintiff] cures the instances of default within thirty (30) days of receipt of this notice as provided in Section 15 of the Lease, [defendant] will seek to enforce its remedies as provided in the Lease and at law." (Id.).

On April 28, 2017, plaintiff responded to the April 14, 2017, letter, asserting its position that it was not using the premises in violation of the lease terms and setting forth items that plaintiff was willing to undertake "to resolve the difference that exists between the two parties." (DE 1-3 at 37). Plaintiff stated in addition "there is a significant question as to whether [defendant] has been operating in good faith with [plaintiff] regarding the Lease and whether such actions give rise to certain business torts." (Id.). Plaintiff stated further:

> While the two sides did engage in discussions regarding the purchase of the Premises, I understand that was unsuccessful. That leaves us with the path of trying to resolve the alleged default as outlined in my letter and I hope we can use this as a foundation to come to an agreement. As [defendant] has given [plaintiff] a deadline of May 14, 2017 to cure the conditions in the Itemized Default Report, *we ask [defendant] to respond to this letter and [plaintiff's] proposals by May 6, 2017*.

(Id.) (emphasis in original). According to defendant, it responded by telephone and then by letter dated May 10, 2017, stating it "respectfully disagree[s] with the positions you state in [the April 28, 2017] letter," and it "stands by the defaults listed in . . . prior letter." (DE 12-4 at 22).

---

[2] According to defendant, on March 16, 2017, defendant agreed to stay running of the default period until April 30, 2017, to allow plaintiff to evaluate purchasing the property. (See DE 12-3 at 29). On April 10, 2017, defendant agreed to further stay default to allow for a cure period until May 14, 2017. (Id. at 30). Although these allegations and documentation thereof are not referenced in the complaint, the court considers them for purposes of addressing certain issues raised by defendant's motion.

5

As noted above, plaintiff filed this action on May 12, 2017, a Friday, in Dublin County Superior Court. Defendant commenced the Tennessee case on May 16, 2017, a Monday. According to the docket in the Tennessee case, on July 7, 2017, plaintiff filed in the Tennessee case a motion to dismiss or transfer the Tennessee case to this court. On July 28, 2017, defendant filed in the Tennessee case an amended complaint that asserts claims against three additional entities in addition to plaintiff, 1) Villari Bros. Foods, LLC, 2) Villari Food Group, LLC, and 3) Villari Brothers Trucking Inc. Defendant has added in the Tennessee case 1) claims for civil conspiracy, unjust enrichment, against these entities and plaintiff, and 2) claims for inducement to breach of contract and intentional interference with business relationships, and punitive damages against these entities. Defendant seeks in the Tennessee case damages in excess of $14 million, trebled, plus punitive damages in excess of $28 million, as well as trial by jury.

Plaintiff in the Tennessee case filed on August 9, 2017, a motion for extension of time to file answer or otherwise respond and to establish new deadlines for initial disclosures and Rule 26(f) conference. Defendant filed a response in opposition to that motion in the Tennessee case on August 10, 2017, and plaintiff replied on August 11, 2017, in the Tennessee case.

**COURT'S DISCUSSION**

A.     Standard of Review

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of the complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A complaint states a claim if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl.

6

Corp v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. 1404(a). Venue is proper in –

> 1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> 2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> 3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. 1391(b). The question of transfer under § 1404(a) is "a matter resting in the sound discretion of the District Judge." S. Ry. Co. v. Madden, 235 F.2d 198, 201 (4th Cir. 1956).

B. Analysis

1. Failure to State a Claim

Defendant argues that plaintiff fails to state a claim under Rule 12(b)(6) and the NCDJA because plaintiff seeks an advisory opinion. The court disagrees.

The NCDJA provides a private cause of action for declaratory judgment:

Courts of record within their respective jurisdictions shall have power to declare

7

rights, status, and other legal relations, whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree.

N.C. Gen. Stat. § 1-253. In addition, the NCDJA expressly permits declaratory judgment claims to be brought to determine rights or legal relations under a contract:

Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise, and obtain a declaration of rights, status, or other legal relations thereunder. A contract may be construed either before or after there has been a breach thereof.

N.C. Gen. Stat. § 1-254. In this respect, the North Carolina Supreme Court long has recognized the availability of a claim for declaratory judgment in a controversy over the construction of a contract:

Where . . . it appears from the allegations of the complaint in an action instituted under the authority and pursuant to the provisions of the act (1) that a real controversy exists between or among the parties to the action; (2) that such controversy arises out of opposing contentions of the parties, made in good faith, as to the validity or construction of a deed, will, <u>or contract in writing</u>, or as to the validity or construction of a statute, or municipal ordinance, <u>contract</u> or franchise; and (3) that the parties to the action have or may have legal rights, or are or may be under legal liabilities which are involved in the controversy, and may be determined by a judgment or decree in the action, the court has jurisdiction, and on the facts admitted in the pleadings or established at the trial may render judgment, declaring the rights and liabilities of the respective parties, as between or among themselves, and affording the relief to which the parties are entitled under the judgment.

<u>Carolina Power & Light Co. v. Iseley</u>, 203 N.C. 811, 167 S.E. 56, 60 (1933) (emphasis added).

In light of the foregoing principles, plaintiff's claims for declaratory judgment fall squarely within the authority of the NCDJA. First, plaintiff has alleged that "a real controversy exists" between it and defendant, <u>id.</u>, where defendant repeatedly has declared plaintiff in default of the lease and where plaintiff repeatedly has denied that it is in default of the lease. Second, the

controversy arises out of "opposing contentions of the parties" as to the construction of the lease, id., where the correspondence between the parties leading up to the filing of this action reveals considerable difference of opinion between the parties as to interpretation of lease terms, particularly provisions regarding allowed uses and procedures for approving modifications and alterations to the premises.

Third, the parties both "have or may have legal rights, or are or may be under legal liabilities which are involved in the controversy, and may be determined by a judgment or decree in the action," id., where, if plaintiff's construction of the lease is correct it will not be in default, and if defendant's construction of the lease is correct plaintiff will be in default. Default, in turn, triggers additional rights and remedies under the lease, including termination of the lease and notice obligations, which defendant itself pointed out in correspondence with plaintiff. (DE 1-1 at 18-19). Furthermore, resolution of the parties' controversy regarding construction of lease terms will determine whether plaintiff may keep modifications in place or continue to make modifications to the leased premises, or whether, as defendant has asserted, plaintiff must remove or cease making modifications. (Id. at 19).

Plaintiff also has stated claims for breach of contract. Under North Carolina law, the "elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." Crosby v. City of Gastonia, 635 F.3d 634, 645 (4th Cir. 2011) (quotations omitted). "In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." Bicycle Transit Auth., Inc. v. Bell, 314 N.C. 219, 228 (1985). "It is a basic principle of contract law that a party who enters into an enforceable contract is required to act in good faith and to make

reasonable efforts to perform his obligations under the agreement." Weyerhaeuser Co. v. Godwin Bldg. Supply Co., 40 N.C. App. 743, 746 (1979). However, an asserted implied term cannot be used to contradict the express terms of a contract. See Vetco Concrete Co. v. Troy Lumber Co., 256 N.C. 709, 713 (1962).

Here plaintiff has alleged the existence of a valid contract, the lease, as well as breach of the terms of that contract, where defendant is alleged to have improperly noticed a default and demanded cures on the basis of approved modifications and uses, and where defendant is alleged to have withheld unreasonably approval for modifications. Plaintiff also alleges that this conduct was a breach of the implied covenant of good faith and fair dealing under the lease. As such, plaintiff has stated claims under the NCDJA and under North Carolina law for breach of contract.

Defendant suggests, nonetheless, that the instant action seeks an advisory opinion only because defendant has not sought to terminate the lease or to obtain possession of the leased premises. Defendant cites in this regard a North Carolina Court of Appeals case affirming dismissal of a declaratory judgment claim, where a lessee remained in possession of leased premises, New Bar P'ship v. Martin, 221 N.C. App. 302, 309 (2012). That case, however, is distinguishable from the instant case because there "no party had taken any action to interfere with [the plaintiff's] rights" under the lease. Id. In this case, by contrast, defendant sent a notice of default to plaintiff, asserting violations of the lease terms, demanding corrections, and stating plaintiff "must cease all work on the modifications." (DE 1-1 at 18-19). After plaintiff set forth its position in detail, defendant categorically rejected such position leaving in place a deadline for expiration of cure period, at which point, "[defendant] will seek to enforce its remedies as provided in the Lease and at law." (DE 1-3 at 12-13). Defendant indeed did so by commencing the Tennessee case. Thus, defendant's

suggestion that there was or is no live controversy between the parties is not supported by the record.

Defendant also argues that plaintiff fails to state a claim under the NCDJA because the instant action will not resolve all matters in dispute between the parties, particularly defendant's tort claims asserted in the Tennessee case. Defendant points to § 1-257 of the NCDJA, which provides that the "court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding." N.C. Gen. Stat. § 1-257. Defendant's argument misses the mark.

The NCDJA does not require a declaratory judgment claim to resolve <u>all matters or claims</u> in dispute as between the parties, but rather only "the uncertainty or controversy giving rise to the proceeding." N.C. Gen. Stat. § 1-257. In this case, for the reasons stated above, plaintiff's declaratory judgment claim would resolve the uncertainty or controversy giving rise to the instant proceeding, where it would resolve the parties' disputes regarding the construction of provisions regarding approved uses and modifications under the lease. That defendant may have tort claims against plaintiff, which defendant has not elected to raise in this court at this time, does not serve to extinguish plaintiff's right to pursue declaratory judgment claims to resolve the controversy before this court.

Moreover, although the issue is not squarely presented to the court at this juncture where defendant's tort claims are not pleaded in this instant action, the declaratory relief sought may, in fact, terminate all matters or claims between the parties, including tort claims asserted by defendant, if plaintiff was not and is not acting in violation of lease provisions, as plaintiff alleges. Likewise, defendant's tort claims may be subject to dismissal under North Carolina law where the alleged tortious conduct arises in the course of plaintiff's performance under the lease. See <u>Strum v. Exxon</u>

11

Co., U.S.A., 15 F.3d 327, 333 (4th Cir. 1994) (stating it is "unlikely that an independent tort could arise in the course of contractual performance, since those sorts of claims are most appropriately addressed by asking simply whether a party adequately fulfilled its contractual obligations"). Where a cause of action presumes the "existence of an agreement, the terms contained in an agreement, and the interpretation of an agreement," the issues raised must be relegated to the arena of contract law, and are not appropriate for resolution under tort principles. Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir. 1998).

In sum, defendant's argument that plaintiff's claims should be dismissed for failure to state a claim upon which relief can be granted is without merit.

2. Procedural Fencing

Defendant argues also that filing of the instant action constitutes "procedural fencing" and an impermissible "race to the courthouse," requiring dismissal under the NCDJA and the court's inherent authority. The court disagrees that this asserted conduct requires dismissal of plaintiff's claims.

As an initial matter, the NCDJA itself does not authorize the court to dismiss a declaratory judgment action on the basis of procedural fencing or racing to the courthouse. Indeed, the North Carolina Supreme Court has interpreted the NCDJA to "permit[] a trial court, in the exercise of its discretion, to decline a request for declaratory relief when (1) the requested declaration will serve no useful purpose in clarifying or settling the legal relations at issue; or (2) the requested declaration will not terminate or afford relief from the uncertainty, insecurity, or controversy giving rise to the proceeding." Augur v. Augur, 356 N.C. 582, 588-89 (2002). "[W]hen the requested declaration satisfies the recognized criteria we articulate above, the trial court has no discretion to decline the

request." Id. at 589 (emphasis added). Accordingly, under North Carolina law, this court does not have authority to dismiss the instant declaratory judgment action on the basis of plaintiff's asserted procedural fencing or racing to the courthouse.

Defendant suggests, nonetheless, that this court has inherent authority to dismiss this action on the basis of asserted procedural fencing or racing to the courthouse, citing to North Carolina Court of Appeals and federal district court cases that discuss jurisprudence interpreting the federal Declaratory Judgment Act, 28 U.S.C. 2201. See, e.g., Tucker Materials, Inc. v. Safesound Acoustics, 971 F.Supp.2d 537, 540 (W.D.N.C. 2013); Coca-Cola Bottling Co. Consol. v. Durham Coca-Cola Bottling Co., 141 N.C. App. 569, 578–79 (2000). As an initial matter, in light of the North Carolina Supreme Court's interpretation of the NCDJA in Augur, reference to such authorities is questionable in determining the propriety of dismissal of the instant matter initially brought in state court and asserting claims under the NCDJA rather than federal Declaratory Judgment Act. See Augur, 356 N.C. at 589; Goldston v. State, 361 N.C. 26, 33 (2006); see also Perry v. Bank of Am., N.A., 796 S.E.2d 799, 802–03 (N.C. Ct. App. 2017) (reversing trial court's dismissal of declaratory judgment claim, and citing Augur for the proposition that "a trial court's discretion to decline a request for declaratory relief has been limited by our Supreme Court").

In any event, federal jurisprudence interpreting the Declaratory Judgment Act does not provide a persuasive basis for dismissal under the circumstances of this case. As an initial matter, "[i]t has long been held in this circuit that, as a principle of sound judicial administration, the first suit should have priority, 'absent the showing of balance of convenience in favor of the second action.'" Ellicott Mach. Corp. v. Modern Welding Co., 502 F.2d 178, 180 (4th Cir. 1974) (quoting Remington Products Corp. v. American Aerovap, Inc., 192 F.2d 872, 873 (2d Cir. 1951)). Here,

13

there has been no showing of a balance of convenience in favor of the Tennessee case, particularly where the lease is governed by North Carolina law, the leased property is in North Carolina, plaintiff's operations are in North Carolina, and defendant asserted default based upon its inspection of the property in North Carolina.

While additional factors must be considered where a plaintiff brings a declaratory judgment action under federal law, even assuming such factors are applicable here, those factors do not favor dismissal in this case. Where the first-filed suit is seeking declaratory relief, trial courts "weigh the legitimate concerns of efficiency and comity." Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 594–95 (4th Cir. 2004). In this vein, the Fourth Circuit has "enumerated several factors to guide district courts in their exercise of . . . discretion" in determining whether to entertain a declaratory judgment action. Aetna Cas. & Sur. Co. v. Ind. Com Elec. Co., 139 F.3d 419, 421-22 (4th Cir. 1998). However, "these factors have been formulated in cases where there were parallel state court proceedings." Id.

For instance, courts have looked at the following factors in deciding whether to entertain a declaratory judgment action:

> (i) the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in the state courts; (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; and (iii) whether permitting the federal action to go forward would result in unnecessary 'entanglement' between the federal and state court systems, because of the presence of 'overlapping issues of fact or law.'

Id. at 422; see, e.g., New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 297 (4th Cir. 2005) (stating that the trial court's "discretion, while not unbounded, is especially crucial when, as here, a parallel or related proceeding is pending in state court," and "[i]n such situations federal courts must weigh considerations of federalism, efficiency, and comity.") (emphasis added;

14

quotations omitted).

Finally, even where no parallel state court action is pending, a district court may consider "whether the declaratory judgment is being used merely as a device for procedural fencing – that is, to provide another forum in a race for res judicata." Aetna, 139 F.3d at 423 (quoting Nautilus Insurance Co. v. Winchester Homes, Inc., 15 F.3d 371 (4th Cir.1994)). Nonetheless, "the existence of such a [parallel state court] proceeding should be a significant factor in the district court's determination." Aetna, 139 F.3d at 423. And, in one case where other factors outbalanced that significant factor, Aetna, "there [were] bona fide reasons for the lack of any pending state court action," beyond defendant's control. Id.

Here, balancing all the circumstances, this is not a proper case for dismissal on the basis of procedural fencing or a race to the courthouse. Critically, in the instant action, there are no parallel state court proceedings, indeed plaintiff is the one who brought this action originally in state court and the parallel proceeding is in federal court in Tennessee. Unlike in Aetna, there is no bona fide reason for the lack of any pending state court action, indeed plaintiff's action would still be pending in state court had defendant not removed it to federal court. Plaintiff's action also raises issues of North Carolina law and issues regarding usage of a property in North Carolina. None of these factors favor defendant here; indeed, they suggest a need for deference to plaintiff's initial choice of filing this action in North Carolina state court.

This leaves the timing of plaintiff's action as a factor for the court's consideration. In light of all the significant foregoing factors favoring plaintiff, the court finds that timing alone, however it is characterized, is not sufficient to provide a basis for dismissal of the instant action. In any event, defendant's characterization of the timing of plaintiff's action does not take into account all

15

the nuances of the circumstances presented. Defendant suggests, for example, that it was improper for plaintiff to file suit days before the agreed-upon cure period expired, knowing that defendant would not take action to exercise rights and remedies under the law until after that deadline had passed.

During the cure period, however, plaintiff undertook substantial efforts to explain its position and to undergo and forgo certain modifications in order to resolve the dispute. On April 28, 2017, plaintiff expressly asked defendant to respond to those proposals by May 6, 2017. (DE 1-3 at 37). When defendant responded by telephone and then by letter dated May 10, 2017, rejecting those proposals and reasserting its position of default, the dispute was framed. (DE 12-4 at 22). Under the circumstances where plaintiff was engaged in ongoing substantial business operations in the leased premises, and where the terms of the lease and the law could have enabled defendant to take any number of actions upon an asserted default, it is not reasonable to expect plaintiff passively to await the next steps by defendant.

Furthermore, this case stands in contrast to others where defendants have used a declaratory judgment action to obtain jurisdiction in a court where it would not otherwise have jurisdiction to assert a claim. For example, this court's decision in Ret. Comm., Plan Adm'r of Exec. Ret. Plan of Thermal Ceramics Latin Am. v. Magasrevy, 124 F. Supp. 3d 679 (E.D.N.C. 2015), cited by defendant, is instructively distinguishable. There, the court dismissed an ERISA action for lack of jurisdiction on the basis that a declaratory judgment action did not meet the statutory requirement to enforce ERISA. Id. at 685. In the alternative, the court held that the plaintiff had engaged in procedural fencing, because the defendant had expressed intent to litigate in his district of residence but the plaintiff first filed suit in a district where the defendant "would not otherwise be subject to

personal jurisdiction absent ERISA's nationwide service of process provision." Id. at 687. No such circumstances are present here, where plaintiffs have filed suit over a property leased in this district.

Another case emphasized by defendant, Tucker Materials, 971 F. Supp. 2d 537, is instructively distinguishable on multiple fronts. There, the plaintiff filed a federal declaratory judgment action a month before defendant filed a state court action, with that state court action spawning multiple related significant factors in the analysis. Id. at 541-42. One such additional factor favors plaintiff here, rather than defendant, namely that North Carolina courts have a strong interest in adjudicating claims arising out of a lease governed by North Carolina law, such as claims in both this action and the Tennessee case asserting breach of lease. Id. at 543. In addition, in Tucker the court noted possibility that joining additional parties in the federal action could destroy federal jurisdiction, thus "caus[ing] further delay," id. at 546, a problem not at issue here even if all defendants named in the Tennessee case are joined to this action.

The court in Tucker raised an additional issue that is a red herring, which defendant attempts also to make an issue here. In particular, the court in Tucker expressed concern over "the inverted nature of any trial that would be conducted in the federal forum." Id. at 546. "Following typical protocol," it opined, the declaratory judgment plaintiff "would begin trial by explaining why it is not liable to [the defendant], a formidable task given that all of [the defendant's] theories of liability would not yet be in evidence." Id. Thus, the court reasoned, the "potential for jury confusion is substantial." Id.

These concerns are unfounded. District courts have substantial discretion to order presentation of issues and evidence at trial as they deem appropriate. See Fed. R. Civ. P. 42; see also Huddleston v. United States, 485 U.S. 681, 690 (1988) ("[A] trial court has traditionally exercised

the broadest sort of discretion in controlling the order of proof at trial."); Atl. Greyhound Corp. v. Eddins, 177 F.2d 954, 959 (4th Cir. 1949) ("Direction of the orderly presentation of evidence is in the discretion of the trial court."). "Inverted trials" and prioritizing of declaratory claims described in Tucker are not required by the federal rules, and the parties will have ample opportunity to raise issues about presentation of evidence and ordering of trial, if the claims in the Tennessee case are transferred here.

    3.    Venue

Defendant seeks, in the alternative, to transfer venue to the Eastern District of Tennessee. "District courts . . . consider four factors when deciding whether to transfer venue: (1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." Trustees of the Plumbers and Pipefitters Nat. Pension Fund v. Plumbing Services, Inc., 791 F.3d 436, 444 (4th Cir. 2015). "[P]laintiff's choice of venue is entitled to substantial weight in determining whether transfer is appropriate." Id.

Consideration of these factors weighs in favor of venue remaining in the Eastern District of North Carolina. First, for all the reasons stated above with respect to dismissal, this court gives substantial weight to plaintiff's choice of venue. Second, convenience of the witnesses and parties leans in favor of venue in North Carolina. While defendant asserts that material witnesses are located in Tennessee, plaintiff asserts that it does not have any employees in Tennessee and all of its employees work in North Carolina. (DE 13 at 27-28; DE 19-1 at 4). Tipping the balance in favor of North Carolina, the subject property is located in North Carolina and defendant's employees or representatives have been in North Carolina to manage and inspect the property. (DE 19-1 ¶ 22).

Third, the interests of justice favor venue in North Carolina, given that the lease is governed

by North Carolina law. (DE 12-2 at 17). Defendant argues that it is significant that Addendum 5 was signed last by it in Tennessee. The lease and Addendum 1, however, were last signed by plaintiff in North Carolina. (DE 19-1 ¶ 7). Finally, the court finds no support in caseload statistics cited by defendant for transferring venue to the Eastern District of Tennessee.

In sum, in light of all the circumstances, the court declines to transfer venue to the Eastern District of Tennessee.

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss, or, in the alternative, to transfer (DE 12) is DENIED. An initial order regarding planning and scheduling will follow.

SO ORDERED, this the 15th day of August, 2017.

_____
LOUISE W. FLANAGAN
United States District Judge